UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TAPLICE STAPLETON,

                      Plaintiff,                                **<u>ORDER</u>**

                                                  22-CV-4044 (NCM) (JMW)

           *-against-*

PRINCE CARPENTRY, INC., *et al*,

                      Defendants.
------------------------------------------------------------X

**A P P E A R A N C E S:**

**David Zevin, Esq.**
55 Cedar Drive
Roslyn, NY 11576
*Attorney for Plaintiff*

Adam Granek Guttell, Esq.
Isaac Scott Baskin, Esq.
**Jackson Lewis, P.C.**
58 South Service Road, Suite 250
Melville, NY 11747
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

       Plaintiff Taplice Stapleton commenced this suit against Prince Carpentry, Inc. ("Prince"),

Thomas Voss, and John Punis (collectively "Defendants") alleging that she did not receive: (1)

her earned wages because of her race and sex and (2) reasonable accommodations upon returning

to work after sustaining injuries in a car accident.  She alleges that Defendants' conduct violated

the N.Y. Labor Law § 194; the New York Executive Law § 290, *et seq.*; the New York City

Administrative Code § 8-101, *et seq.*; the Family Medical Leave Act of 1993, 29 U.S.C. § 2601,

*et seq.* ("FMLA"); and the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, *et seq.*
The threshold issue is whether Plaintiff could have performed her job duties with or without a
reasonable accommodation upon her return from FMLA leave.

Before the Court is Plaintiff's motion to compel Defendants to produce a historical record
indicating the number of employees on Defendant Prince's payroll dating from 1971 through
2017 (ECF No. 27).  Defendants oppose this request.  (*Id.*)  For the reasons set forth below, the
Motion is granted in part as set forth below.

## BACKGROUND

Defendant Prince is a drywall and carpentry subcontracting company.  (ECF No. 1-2 ¶ 5.)
Defendants would hire staff personnel "who handled day-to-day operations, payroll, financial
matters, personnel matters, compliance matters, etc."  (*Id.* ¶ 6.)  Defendants Voss and Punis were
able to hire and fire employees and could alter the conditions of Plaintiff's employment.  (*Id.* ¶¶
8-9.)

Plaintiff is an African-American woman who began working for Defendants around 2003
until she was terminated in June 2019.  (*Id.* ¶ 7.)  She began as a receptionist but later assumed
payroll duties around 2010 without an increase in pay.  (*Id.* ¶¶ 10-11.)  When personnel in the
payroll department were terminated, she soon manned the entire payroll department without any
change to her title or pay and earned far less than the two males that formerly worked in the
payroll department.  (*Id.* at ¶¶ 12-16, 22.)

Among her duties in payroll, Plaintiff was responsible for:

processing weekly payroll; printing, processing, sorting and mailing checks; fraud
prevention on bank website; balancing payroll; employee verification; maintenance of
employee records; unemployment compensation processing, processing; processing
minority reports; processing insurance reports; processing union benefits; computer entry
of employee hours; and processing shop steward reports.

2

(*Id.* ¶ 17.)  By the time she was terminated she received an annual salary of $62,000.  (*Id.* ¶¶ 19, 22.)

After suffering injuries from an automobile accident around March 2018, Plaintiff became disabled and was unable to stand or walk for long periods of time and so informed the Defendants.  (*Id*. ¶ 25-28.)  Around February or March 2019, she was given leave under the FMLA because of her injuries.  (*Id.* ¶ 53.)  She requested to return to work for 20 hours per week and work the remainder of her hours at home, if needed.  (*Id*. ¶ 28.)  She alleges her work could be performed indoors within 20 hours per week.  (*Id*. ¶¶ 31-32.)  However, Plaintiff states that her request was denied and Defendants "failed to engage in the interactive dialog required by law in order to determine whether a reasonable accommodation could be made."  (*Id*. ¶¶ 34, 37.)  Defendants cited the handling of sensitive documents and answering in-office phone calls as the reasons for denial.  (*Id*. ¶ 38.)  These reasons, however, were inconsistent with past practice— Plaintiff had been able to work from home in the past and take home sensitive documents.  (*Id.* ¶ 41.)  Further, Defendants have a call overflow system in which other personnel could pick up the calls if she was unable to do so.  (*Id.* ¶ 45.)  On June 14, 2019, around the time of the expiration of her FMLA leave, Defendants terminated Plaintiff.  (*Id*. ¶¶ 60, 63.)

## PROCEDURAL BACKGROUND

Plaintiff filed suit with the Equal Employment Opportunity Commission in January 2020.  (ECF No. 1-2 ¶ 50.)  She was then allowed ninety days from the receipt of her Determination and Notice of Rights letter to file a lawsuit under the ADA.  (*Id.*)  Shortly thereafter, Plaintiff sued Defendants in the Queens County Supreme Court.  (*See generally* ECF No. 1-2.)  Defendants subsequently removed the case to federal court on July 11, 2022, with subject matter jurisdiction predicated on the existence of federal questions.  (ECF No. 1 ¶ 8.)

On March 13, 2024[1], Plaintiff filed the instant motion to compel production of the number of employees on Prince's payroll dating from 1971 through January 3, 2017 (ECF No. 27).  Specifically, the interrogatory request is as follows:

> A list, similar to that dated February 17, 2023 previously provided, of the number of payroll checks issued to Prince's field employees for each individual week between the time period beginning with Michael Caruso's first date of employment through January 3, 2017, and between the time period beginning June 14, 2019 through present.

(ECF No. 27-1 at 1.)

The historical number of employees on payroll is relevant, Plaintiff says, because it would show that she could have indeed performed her duties within 20 hours if she was provided the requested reasonable accommodations.  For example, Plaintiff alleges that if there are 300 employees on payroll, it may take one payroll specialist to complete payroll in 35 hours, whereas a payroll for 70 employees would likely only take 20 hours to complete.  (*Id.* at 2.)   In other words, fewer employees means fewer hours needed to complete payroll duties.  Plaintiff asserts that Defendant Prince has the data from 2008 onwards and can apparently produce this information with ease since it has already produced this same information for years 2017 to 2023.  (*Id.*)

Defendants object to the interrogatory arguing the request is unduly burdensome and overbroad because it seeks information beyond the statute of limitations.  Further, Defendants claim the information sought is not relevant to Plaintiff's claims, not proportional and are "harassing," given the issues concerning Defendants' failure to accommodate in the case, the amount in controversy, and the burden and expense.  (*Id.*)  Defendants contend they have

---

[1] The original motion to compel (ECF No. 24) was denied without prejudice with leave to renew upon the parties' identification of the type of discovery device that Plaintiff sought to compel responses to and attachment of the requests and responses at issue.  (Electronic Order dated Mar. 11, 2024.)  The parties submitted the required documentation at ECF No. 27 shortly after.

produced roughly seven years' worth of documents and that data should be sufficient.  (*Id.* at 3.)
Finally, Defendants claim these old records are additionally irrelevant given that the process and
tools used to issue payroll checks have changed over time.  (*Id.*)

## LEGAL STANDARD

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable
than it would be without the evidence; and (b) the fact is of consequence in determining the
action.'"  *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y.
Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Moreover, "[t]he party seeking the discovery must
make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."
*Evans v. Calise*, No. 92-CV-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also*
*Mandell v. The Maxon Co., Inc.*, No. 06-CV-460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16,
2007) ("[T]he party seeking discovery bears the burden of initially showing relevance.").  To that
end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs
of the case, taking into consideration such aspects as the importance of the issues, the amount in
controversy, the parties' resources and access to the information sought, and the importance of
the information sought to the asserted claims or defenses.  *Sibley v. Choice Hotels Int'l*, No. 14-
CV-634 (JS) (AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

Since December of 2015, "Rule 26 has defined the scope of discovery to consist of
information that is relevant to the parties' 'claims and defenses.'"  *Pothen v. Stony Brook Univ.*,

No. 13-CV-6170 (JFB) (AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017).  "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)).  Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020).  That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate. *Id.*

"Motions to compel are left to the court's sound discretion."  *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").  It is with these guideposts in mind that the Court considers the present motion.

## DISCUSSION

### A. Relevance and Proportionality

Plaintiff seeks 46 years' worth of data—namely the number of employees on the payroll from 1971 to January 2017.  Given that a threshold issue in this case is whether Plaintiff could have performed her payroll duties within 20 hours, i.e., her requested accommodation, this information is relevant, she says, to demonstrate that Defendants failed accommodate her and would further support her ADA claim.

To make out a *prima facie* failure-to accommodate claim under the ADA, a plaintiff must demonstrate:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of h[er] disability; (3) *with reasonable*

>    *accommodation, plaintiff could perform the essential functions of the job at issue*;
>    and (4) *the employer has refused to make such accommodations.*

*Bost v. Nassau Cnty. Dep't of Soc. Servs.,* No. 22-2547, 2023 U.S. App. LEXIS 25802, at *3 (2d

Cir. Sept. 29, 2023) (emphasis added).

      Plaintiff here alleges that Defendants failed to engage in the interactive dialogue with her

as required by the ADA after she requested to work 20 hours.  (ECF No. 1-2.)  In *Sheng v.

M&TBank Corp.*, the Second Circuit stated that "a failure to engage in a good faith interactive

process is not an independent violation of the ADA."  *Sheng v. M&TBank Corp.,* 848 F.3d 78, 87

(2d Cir. 2017).  Rather, to determine if a reasonable accommodation exists, the employer must

initiate an "informal, interactive process with the [qualified] individual with a disability in need

of the accommodation. Even where the employer has refused to interact with the claimant, a

violation of the ADA requires a showing of a disability as defined by the ADA, proof of

qualification, *and the existence of a reasonable accommodation*."  *Id*. (citing 29 C.F.R. §

1630.2(o)(3)) (emphasis added); *see also Petrone v. Hampton Bays Union Free Sch. Dist.*, No.

03-CV-4359 (SLT) (ARL), 2013 U.S. Dist. LEXIS 97292, at *83 (E.D.N.Y. July 10, 2013)

(noting that plaintiff did not identify an accommodation that would have made it possible for him

to perform his job).

      The records sought here would assist Plaintiff in demonstrating a reasonable

accommodation existed—namely, that she could have performed her payroll duties in 20 hours.

Indeed, the Complaint states that before she was out on medical leave, she attested that her work

totaled "significantly less than 20 hours per week."  (ECF No. 1-2 at 8.)  She states that because

her payroll duties included accounting for the employees on Defendants' payroll, obtaining the

number of employees on payroll over the requested period of time would show that she could

have performed the work in 20 hours or less, while, in the past this could not have been done, if

there were more employees.  *Cf. Conservation Law Found., Inc. v. Shell Oil, Co.,* No. 21-cv-

00933 (JAM), 2023 U.S. Dist. LEXIS 147065, at *61-62 (D. Conn. Aug. 22, 2023) (reducing the

scope of requested documents since plaintiff failed to show the relevance of the documents pre-

dating 2017).  Thus, the request would help Plaintiff establish the failure to accommodate claim

under the ADA and that Defendants correspondingly failed to engage in the interactive dialog

with her as required.

    Further, the request only seeks the *number* of employees for a certain time period[2]—it

does not seek irrelevant or extraneous information such as the identity of the employees, salary

information, or date of hire and termination associated with these individuals.  Rather, the

information in the request is narrowly tailored to the claims at issue.  *Cf. Allen v. Colgate-*

*Palmolive Co.*, 539 F. Supp. 57, 70-71 (S.D.N.Y. 1981) (imposing restrictions on plaintiff's

document requests because plaintiff failed to show their relevance); *Hobson v. Kemper*

*Independence Ins. Co.*, No. 20-CV-00812 (JCH), 2021 U.S. Dist. LEXIS 148519, at *13 (D.

Conn. Aug. 9, 2021) (same); *Boudreau v. Smith,* No. 17-cv-589 (SRU), 2019 U.S. Dist. LEXIS

142712, at *11-12 (D. Conn. Aug. 22, 2019) (finding plaintiff's requests for admission would

require defendant to produce irrelevant information unrelated to the remaining claim);

*Cherenfant v. Nationwide Credit, Inc.,* No. 03-CV-60655, 2004 U.S. Dist. LEXIS 30458, at *18-

19 (S.D. Fla. May 7, 2004) (denying plaintiff's motion in a Title VII case in part because it

overbroadly sought "all documents that refer, relate or pertain to the number of individuals

---

[2] Below is a sample of what Defendants have provided in the past with respect to the request for the
number of payroll checks issued to Defendant Prince's employees from 2019 onwards:

| Period End Date | Check Count |
| --- | --- |
| 6/18/2019 | 70 |
| 6/25/2019 | 65 |
| 7/2/2019 | 67 |
| 7/9/2019 | 69 |

currently employed by Defendant and the number of individuals employed at the time of Plaintiff's separation from employment" and "all that [wa]s relevant [wa]s a numerical figure"). Accordingly, the request is already sufficiently narrowed to the type of information needed for this claim and would yield relevant material to support Plaintiff's ADA claim.

### B. Unduly Burdensome

Defendants argue the forty-six years of payroll information is unduly burdensome and irrelevant, and they have *already* provided span from the time plaintiff was employed to the time she was terminated.  (ECF No. 27 at 2-3.)  Notably, Plaintiff also states that Defendant Prince only possesses the records from 2008 to 2017.  (*Id.* at 1.)

However, palpably absent from Defendants' objection is any indication as to how burdensome producing the information would be.[3]  Defendants have already produced similar documents to Plaintiff for the 2017 to 2023 timeframe but said nothing about whether that production entailed a significant lift.  Nor have the Defendants stated how it would have to retrieve documents prior to 2008.  Such broad objections fit squarely within the type of objections that courts tend to reject, especially since the party objecting to discovery has the burden of demonstrating, with a degree of specificity, how each question is overbroad or why each request is irrelevant.  *See e.g., Bursztein v. Best Buy Stores, L.P.,* No. 20-CV00076 (AT)

---

[3] Defendants' objection to the interrogatory reads:

Defendants object to this Request on the grounds that it is unduly burdensome as it is overbroad in time in that it seeks forty-six (46) years of records, and vague as to the term "similar to". Defendants further object to this Request on the grounds that it is unduly burdensome as it requests documents well beyond the applicable statute of limitations to Plaintiff's claims, seeks documents not relevant to any party's claims or defenses and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues in time.

(ECF No. 27-2 at 3.)

9

(KHP), 2021 WL 1961645, at *6 (S.D.N.Y. May 17, 2021) ("[C]ourts in this District have previously said that general objections should rarely be used, unless the objections specifically apply to each document request at issue."); *Alliance Indus.v. Longyear Holding, Inc.,* No. 08CV490S, 2010 U.S. Dist. LEXIS 73471, at *9-10 (W.D.N.Y. July 21, 2010) (finding that defendant was required to provide complete answers to the interrogatories despite the fact that they referred to documents and testimony already provided); *Fischer v. Forrest,* No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he responses to requests 1-2 stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing."). Because of Defendant's lack of specificity, the Court cannot discern whether producing the information would be unduly burdensome, tipping in favor of granting Plaintiff's motion.

### C. Overbroad

Notwithstanding the above, the period of records requested, from 1971 to 2017, is overbroad, as it consists of 46 years' worth of data. The Court is cognizant that over the span of many decades, times have changed and Defendant Prince has since introduced new processes to offset the amount of time payroll personnel takes to complete their duties. (ECF No. 27 at 3.) Accordingly, the Court shortens the temporal scope of the request, which would provide a more accurate and relevant historical record.

The Court reduces the records that Defendants must produce from January 1, 1994 through January 3, 2017. This time period encapsulates a portion of the time when Caruso worked at Prince and includes the *entire* period when Plaintiff worked at Prince and completed payroll duties. Further, providing Plaintiff with a historical record from 1994 through January 3,

2017 will give her a continuous timeline of the number of employees for a few decades because she already has documents from 2017 through 2023.  (ECF No. 27.)

The Court in *Fleming v. City of New York,* 233 F. Supp. 2d 613, 614 (S.D.N.Y. 2002) denied a plaintiff's request that spanned 5 years.  The court noted that the defendants already turned over three years' worth of information, "which th[e] [c]ourt deem[ed] [wa]s more than enough to prove her point."  *Id.*  Unlike the court in *Fleming*, this Court believes that Defendants' production of the information already provided for 2017 to 2023 is only partially sufficient and should include a portion of Caruso's tenure for Plaintiff to get a fulsome picture to support her claims.  *Cf. Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42, 48 (W.D.N.Y. 1986) (finding plaintiff's request not overbroad, which sought discovery from 1978 to her termination in 1982 because it was relevant to her claims that she received less pay than her male counterparts).

## CONCLUSION

For the reasons stated, Plaintiff's Motion to Compel production of number of employees on Prince's payroll (ECF No. 27) is granted in part and denied in part.  Specifically, Defendants must produce historical data requested from January 1, 1994 through January 3, 2017.

Dated:  Central Islip, New York
        March 15, 2024

                                    S O   O R D E R E D:

                                    /S/ *James M. Wicks*
                                    JAMES M. WICKS
                                    United States Magistrate Judge