UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TAPLICE STAPLETON,

*Plaintiff*,

– against –

PRINCE CARPENTRY, INC., THOMAS VOSS, & JOHN PUNIS,

*Defendants*.

**MEMORANDUM & ORDER**
22-cv-04044 (NCM) (JMW)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Taplice Stapleton has filed suit against her former employer, Prince Carpentry, Inc., and individual defendants Thomas Voss and John Punis. Plaintiff brings claims for unequal pay in violation of the New York Labor Law ("NYLL") and the New York State Human Rights Law ("NYSHRL"), disability discrimination and failure to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), the NYSHRL, and the New York City Human Rights Law ("NYCHRL"), interference with her rights under the Family and Medical Leave Act ("FMLA"), and retaliation in violation of the FMLA. Defendants move for summary judgment on each of plaintiff's claims pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, and move in limine for an order striking the testimony of one of plaintiff's experts, Dr. Balvindar S. Sareen. Plaintiff moves for the establishment of certain facts pursuant to Rule 56(g) of the Federal Rules of Civil Procedure.[1] For the reasons discussed below, defendants' motion for summary

[1] Hereinafter, the Court refers to defendants' memorandum of law in support of their motion for summary judgment, ECF No. 66, as "Defs. Mot."; plaintiff's

judgment is **GRANTED** in part and **DENIED** in part; defendants' motion in limine is **GRANTED** in part and **DENIED** in part; and plaintiff's motion is **DENIED**.

## BACKGROUND

Defendant Prince Carpentry, Inc., ("Prince"), is a drywall and carpentry subcontracting company owned by defendant Thomas Voss. Pl. Counter 56.1 ¶¶ 1, 4, 11.[2] Plaintiff was hired as a temporary receptionist at Prince in April 2003, and was promoted to full-time receptionist in July 2003. Pl. Counter 56.1 ¶¶ 4–5.

Between 2007 and 2009, two individuals, Michael Caruso and Syd McIntosh, worked in Prince's payroll department. Pl. Counter 56.1 ¶ 17. Both Caruso and McIntosh are male. Pl. Counter 56.1 ¶ 18. Caruso was Prince's payroll supervisor and was employed by Prince from 1971 to 2009. Pl. Counter 56.1 ¶¶ 21–25. Caruso was responsible for supervising McIntosh and others and handled Prince's taxes, neither of which plaintiff was responsible for during her employment. Pl. Counter 56.1 ¶¶ 29–32. At the time Caruso separated from Prince in 2009, he was earning approximately $83,000 per year. Pl. Counter 56.1 ¶ 25. In 2014, plaintiff was promoted from a receptionist to a payroll specialist. Pl. Counter 56.1 ¶ 11. As a payroll specialist, plaintiff earned $52,000 in 2014.

memorandum of law in opposition to defendants' motion for summary judgment, and in support of plaintiff's cross-motion for the establishment of certain facts, ECF No. 67, as "Pl. Opp'n"; defendants' memorandum in further support of their motion for summary judgment and in opposition to plaintiff's cross-motion for the establishment of certain facts, ECF No. 68, as "Defs. Reply"; and plaintiff's reply memorandum in further support of her cross-motion for the establishment of certain facts, ECF No. 73, as "Pl. Reply."

[2] The facts contained herein are undisputed unless otherwise indicated, and are taken from the parties' statements pursuant to Local Civil Rule 56.1, specifically defendants' 56.1 statement ("Defs. 56.1"), *see* ECF No. 66-1; plaintiff's counter 56.1 statement ("Pl. Counter 56.1"), *see* ECF No. 67-1, plaintiff's 56.1 statement ("Pl. 56.1"), *see* ECF No. 71-1, and defendant's counter 56.1 statement ("Defs. Counter 56.1"), *see* ECF No. 72-1.

Pl. Counter 56.1 ¶¶ 11–12. Plaintiff was employed as a payroll specialist until her termination on June 14, 2019. Pl. Counter 56.1 ¶ 13. At the time of plaintiff's termination she was earning an annual salary of $62,000. Pl. Counter 56.1 ¶ 14.

Plaintiff's duties as a payroll specialist included, among other things, preparing unemployment and employment verification forms and documents, printing, stamping, folding, sorting, and distributing weekly payroll checks, preparing employee union benefit vouchers, collecting time entries, processing payroll, and processing benefit applications. Pl. Counter 56.1 ¶ 15. Plaintiff also performed some administrative tasks, although plaintiff contends that certain administrative tasks, such as accepting deliveries to the office, answering the office phone, and notarizing documents, were usually handled by other employees. Pl. Counter 56.1 ¶ 15. Plaintiff worked full-time, approximately 35 hours per week in Prince's office. Pl. Counter 56.1 ¶ 103.

In March 2018, plaintiff was injured in a car accident. Pl. Counter 56.1 ¶ 36. In this accident, plaintiff suffered permanent damage to her right knee. Counter 56.1 ¶ 37. Plaintiff contacted Prince on the day of the accident, indicating that she would not be at work. Pl. Counter 56.1 ¶ 38. Plaintiff requested from Voss that she be allowed to take one week of leave to recover from her injuries from the car accident, which Voss approved. Pl. Counter 56.1 ¶¶ 39–40. Following her one-week absence, plaintiff returned to full-time work as a payroll specialist with no accommodations for her knee injury. Pl. Counter 56.1 ¶¶ 41–42.

On October 5, 2018, plaintiff had surgery in connection with her injuries from the car accident. Pl. Counter 56.1 ¶ 43. At this time, plaintiff took an approved medical leave from Prince and applied for disability benefits with Voss's assistance. Pl. Counter 56.1 ¶ 44. Plaintiff submitted to Prince a doctor's note indicating that she would be unable to

work until January 3, 2019. Pl. Counter 56.1 ¶ 45. Between the time of her surgery and January 3, 2019, Prince paid plaintiff her accrued vacation leave, sick leave, and a Christmas bonus. Pl. Counter 56.1 ¶ 46. While plaintiff was on leave, plaintiff's payroll duties were performed by Catherine Pepe, another Prince office staff member. Pl. Counter 56.1 ¶ 109.

On or about January 3, 2019, plaintiff contacted Voss to inform him that she would not be returning to work. Pl. Counter 56.1 ¶ 49.[3] Plaintiff thereafter submitted a second doctor's note that she would not be able to return to work for another month. Pl. Counter 56.1 ¶ 51. After that additional month, plaintiff still did not return to work. Counter 56.1 ¶ 54. Voss reached out to plaintiff around this time to discuss plaintiff's return. Counter 56.1 ¶ 55. Plaintiff thereafter submitted a third doctor's note indicating that plaintiff would not return to work for another two months, in April 2019. Pl. Counter 56.1 ¶ 57. Voss then emailed plaintiff an FMLA leave notice informing plaintiff that she was entitled to 12 weeks of unpaid leave, which would begin from that point forward, and requested plaintiff fill out certain forms. Pl. Counter 56.1 ¶¶ 59–60.

On March 8, 2019, plaintiff submitted her FMLA certification documents to Voss. Pl. Counter 56.1 ¶ 61. On May 17, 2019, plaintiff visited her doctor for an MRI on her injured knee. Pl. Counter 56.1 ¶ 66. Plaintiff's doctor issued a note to her detailing her capacity for work. Pl. Counter 56.1 ¶ 68. This note included that plaintiff could "work part time (3 days/week – 20 h[ours]/week)." Pl. Counter 56.1 ¶ 69. The doctor's note indicated that the restrictions would last for at least six months. Pl. Counter 56.1 ¶ 87.

---

3 In plaintiff's counter 56.1 statement, she notes that at this time she was simply instructed by her doctor not to return to work rather than "not allow[ed] . . . to return to work." Pl. Counter 56.1 ¶ 49.

Shortly after the issuance of the May 2019 doctor's note, plaintiff and Voss had a phone conversation during which plaintiff requested to return to work in Prince's office part-time, around 20 hours per week. Pl. Counter 56.1 ¶¶ 71–72. Plaintiff alternatively requested to be allowed to work the remaining 15 hours per week at home, or to work in the office more than 20 hours per week. Pl. Counter 56.1 ¶ 73; *see also* Pl. Opp'n Ex. D ("Voss Dep. Tr.") 206:6–23, ECF No. 67-6. Voss told plaintiff that her requests would be taken under consideration and that he would get back to her. Pl. Counter 56.1 ¶ 76. As of May 2019, no one in the Prince office worked part time. Pl. Counter 56.1 ¶ 90. Plaintiff did not return to her doctor to request any modification to his May 17, 2019 note prescribing medical work restrictions. Pl. Counter 56.1 ¶ 98. On or about May 24, 2019, defendants began searching for candidates for an "administrative assistant," which plaintiff contends was an attempt to replace her. Defs. Counter 56.1 ¶ 10. On June 3, 2019, plaintiff and Voss spoke again to discuss plaintiff's return to work. Pl. Counter 56.1 ¶ 88. During this conversation, plaintiff told Voss that he did not need to tell anyone if she worked more than the 20 hours per week recommended by her doctor. Pl. Counter 56.1 ¶ 94. Voss refused this arrangement. Pl. Counter 56.1 ¶ 94. Prince terminated plaintiff on June 14, 2019. Pl. Counter 56.1 ¶ 108.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13

F.4th 247, 259 (2d Cir. 2021).[4] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence, and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

If "the court does not grant all the relief requested" by a summary judgment motion made pursuant to Rule 56(a), the court "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Rule 56(g) "become[s] relevant only after the court has applied the summary-judgment standard carried forward in Rule 56(a) to each claim, defense, or part of a claim or defense, identified by the motion." *New Generation Produce Corp. v. N.Y. Supermarket, Inc.*, No. 09-cv-05536, 2013 WL 2382970, at *2 (E.D.N.Y. May 30, 2013) (quoting Fed. R. Civ. P. 56 (Committee Note 2010)). Whether to treat certain facts as established pursuant to Rule 56(g) is a matter of discretion. *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014). Thus, "even if the court believes that a fact is not

---

4 Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

genuinely in dispute it may refrain from ordering that the fact be established." *Hasemann v. Gerber Prods. Co.*, No. 15-cv-02995, 2024 WL 1282368, at *15 (E.D.N.Y. Mar. 25, 2024). Even if a fact is not genuinely in dispute, the court "may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Id.*

## DISCUSSION

### I. Defendants' Motion in Limine

Defendants move to strike the expert report of Dr. Sareen, and to preclude Dr. Sareen from testifying as an expert at trial. Defs. Mot. Lim. ("MIL"), ECF No. 60-8.[5] Defendants argue that Dr. Sareen's report and opinion contains legal conclusions that are impermissible under the Federal Rules of Evidence, and those portions of his report that do not contain legal conclusions otherwise constitute a narration of irrelevant facts.[6] Plaintiff opposes defendants' motion, arguing that Dr. Sareen's report largely discusses plaintiff's medical condition and provides background information on standard patient conduct. *See* Pl. Opp'n Defs. Mot. Lim. ("MIL Opp'n"), ECF No. 60-13. Plaintiff alternatively argues that should any of Dr. Sareen's conclusions be "deemed legal in nature," those conclusions are admissible as long as they are not questions to be submitted to the jury. MIL Opp'n 4. The Court agrees with defendants that Dr. Sareen's report contains legal conclusions that are outside the scope of admissible expert opinion.

---

[5] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[6] Defendants make no arguments as to Dr. Sareen's qualification as an expert; thus, at this time, the Court makes no findings as to whether Dr. Sareen is qualified to give the opinions which are consistent with this Court's Order and are not impermissible legal conclusions.

The Court's determination of whether to admit expert testimony is guided by Rule 702 of the Federal Rules of Evidence. *See United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021). Pursuant to that rule, an expert may generally be permitted to testify "if he is qualified, reliable, and helpful." *Id.* The Court must also ensure that expert testimony is reliable and relevant in accordance with the Supreme Court's directives in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). An expert "may not invade the province of the court to determine the applicable law, nor may the expert usurp the role of the jury in applying that law to the facts." *Goss v. Sealift Inc.*, No. 19-cv-05123, 2024 WL 670405, at *5 (E.D.N.Y. Jan. 17, 2024).

Defendants argue that Dr. Sareen's report concludes that plaintiff was "within her rights" to insist on returning to work full-time, notwithstanding her doctor's medical advice to work only 20 hours per week, and that her request to do so was reasonable. MIL 12. Defendants argue that this conclusion is an impermissible attempt to instruct the jury and the Court on the applicable legal standard for considering plaintiff's failure to accommodate claim. MIL 13. In opposition to defendants' motion, plaintiff argues that Dr. Sareen's report concludes that medical professionals allow patients to decide what medical evidence to heed. MIL Opp'n 7. However, this interpretation of the report is belied by its contents. For example, Dr. Sareen's report states that "[plaintiff's] request to work more than 20 hours per week was reasonable under these circumstances." MIL Ex. F ("Sareen Report") 6, ECF No. 60-7. This determination, as to whether plaintiff's request to work more than 20 hours per week would be a reasonable accommodation, is a conclusion to be reached by the jury in determining defendants' liability on plaintiff's failure to accommodate claims. Dr. Sareen's report also states: "[t]o conclude, the

common decision to override physician's instructions, and make one's own health-related decision, was here one to be made entirely by [plaintiff]." Sareen Report 7. However, whether defendants were reasonable in refusing to grant plaintiff an accommodation that conflicted with medical guidance is also a determination to be made by the jury.

Thus, the Court agrees that Dr. Sareen's report contains legal conclusions unfit for expert evidence, and these conclusions must be stricken from his report. Nevertheless, plaintiff notes that other aspects of Dr. Sareen's report concern his "knowledge of patient behavior and the reasons therefor, and as such is proper fodder for expert testimony." MIL Opp'n 7. The Court finds that Dr. Sareen's testimony regarding the issue of patients failing to comply with their doctor's orders, and how commonplace that occurrence is, may be admitted to provide helpful background information to the jury. Additionally, the factual narration provided by Dr. Sareen in the report is limited and does not impermissibly "invade the province of the jury by finding facts that are in contention in this case." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013). It is common for expert reports to contain some background information situating their expert opinion, and the Court declines to strike Dr. Sareen's report in its entirety on that basis. *See LoanCare, LLC v. Dimont & Assocs., LLC*, No. 22-cv-09286, 2025 WL 951585, at *18 (S.D.N.Y. Mar. 28, 2025) ("It is commonplace, even standard or expected, for expert reports to contain a section dedicated to a summary of the factual background relevant to the ultimate opinions and conclusions detailed in the report.").

The Court denies defendants' request to preclude Dr. Sareen's testimony at trial at this time. However, should Dr. Sareen's testimony at trial invade the jury's province in fact-finding, the Court will rule on specific objections to certain aspects of his testimony at the appropriate time.

Plaintiff is directed to submit a proposed redacted version of Dr. Sareen's report that conforms with this order on or before September 22, 2025.

## II. Plaintiff's Unequal Pay Claims

Plaintiff brings unequal pay claims pursuant to the NYLL and the NYSHRL. *See generally* Compl., ECF No. 1-2. Defendants move for summary judgment on both claims. *See* Defs. Mot. 12–13.[7] For the reasons stated below, summary judgment on these claims is **GRANTED**.

### *A. NYLL Unequal Pay Claim*

To establish a claim of unequal pay under the NYLL, the plaintiff must make a prima facie case by offering evidence that "(1) the employer pays different wages to employees outside the protected class; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 245 (S.D.N.Y. 2024). To show that a plaintiff and her comparators performed equal work, the plaintiff may point to whether "[plaintiff] and her comparators had the same title or rank; worked for the same division; shared supervisors; had analogous managerial responsibilities; performed the same tasks; had the same skills or experience; and worked on projects of a similar size or budget." *Moazzaz v. MetLife, Inc.*, No. 19-cv-10531, 2021 WL 827648, at *6 (S.D.N.Y. Mar. 4, 2021). Where a plaintiff and a comparator have

---

[7] Prior to October 8, 2019, New York Labor Law Section 194 only prohibited pay differentials based on sex. This section has subsequently been amended to prohibit pay differentials based on race. N.Y.L.L § 194. As the October 8, 2019 amendments are not retroactive and plaintiff was terminated before October 8, 2019, the Court considers only whether plaintiff has offered evidence in support of her claim that she was paid less because of her gender. *See Herrera v. Syracuse Univ.*, No. 24-cv-00245, 2025 WL 874734, at *19 n.17 (N.D.N.Y. Mar. 20, 2025).

different levels of experience, this fact tends to show that the plaintiff and comparator did not perform equal work. *See Black v. Buffalo Meat Serv., Inc.*, No. 21-1468, 2022 WL 2902693, at *4 (2d Cir. July 22, 2022) (summary order) (noting comparator's longer tenure when determining that plaintiff and comparator did not perform equal work). Once a plaintiff has established a prima facie case, the "burden then shifts to the defendant to provide an affirmative defense that the difference in pay was based on a bona fide factor other than sex." *Manta v. Hofstra Univ.*, No. 157061/2021, 2024 WL 4650644, at *8 (N.Y. Sup. Ct. Nov. 1, 2024).

Here, even viewing the evidence in plaintiff's favor, her unequal pay claim fails because she has not offered evidence showing that she and her comparator performed equal work. Plaintiff's opposition to defendants' motion relies exclusively on the pay differential between herself and Caruso, an employee who worked at defendant Prince from 1971 to 2009. *See* Pl. Opp'n 11–14. Plaintiff has failed to show that she and Caruso performed "equal work" for purposes of her prima facie claim during those years—it is undisputed that Caruso had 38 years of experience by 2009, when plaintiff had at most 4 years of payroll experience by 2014. *See* Pl. Counter 56.1 ¶ 24 (Caruso worked for Prince from 1971 to 2009); Defs. Counter 56.1 ¶ 5 (plaintiff states she took over payroll in 2010). Additionally, the parties agree that Caruso performed managerial tasks, supervised other employees, and was responsible for managing defendants' taxes, which were job responsibilities never assigned to plaintiff. Pl. Counter 56.1 ¶¶ 29–32. Thus, plaintiff has not provided facts by which a jury could find that plaintiff and Caruso performed equal work.

Plaintiff attempts to cure this deficiency by enlisting an economic expert to compare plaintiff's pay and Caruso's alleged salary at a time when they had the same level

of experience. Specifically, this expert calculated "inflation-adjusted, cost-of-living-adjusted wages paid to [Caruso and plaintiff] at times when they possessed equal levels of experience." Pl. Opp'n 10. However, despite the benefit of discovery, plaintiff has no information regarding how much Caruso was making when he began his payroll career with Prince in the early 1970s, so plaintiff states that her economic expert uses Caruso's pay records from 2008 and 2009 to "extrapolate how much money Caruso would have earned at those times earlier in his career when he had the same number of years of experience" as the plaintiff. Pl. Opp'n 11. However, contrary to plaintiff's characterization, the economic expert does not include a calculation of how much money Caruso would have earned earlier in his career. Instead, the report appears to use Caruso's salary in 2008 to calculate how much money plaintiff should have made if she had been working in 2008 with 31 fewer years of experience than Caruso, and then increases that amount to determine how much plaintiff should have been making in 2016. *See* Pl. Opp'n Ex. A ("Shapiro Rep.") 4, ECF No. 67-3.[8]

---

[8] Plaintiff's expert treats Caruso's 2008 compensation as a "benchmark" to determine what plaintiff should have been paid as of 2016. *See* Shapiro Rep. 4. To do so, plaintiff's expert first took Caruso's salary in 2008, which was $83,200, and decreased it by .6 percent for each of 31 years, the difference in the amount of experience that plaintiff had in 2016 and the amount of experience Caruso had in 2008. Shapiro Rep. 4. Dr. Shapiro used the .6 figure as this was the average annual increase in median pay of payroll clerks for each additional year of age for ages 35 to 39 and 55 to 59. Shapiro Rep. 4. n.5. This calculation came out to $70,021. Shapiro Rep. 3. Next, plaintiff's expert increased that number by 13.8%, which is the difference in the Consumer Price Index from 2008 to 2016, to find that plaintiff should have been paid $79,718 in 2016 when she was actually paid $56,420. Shapiro Rep. 4.

Dr. Shapiro's report calculates plaintiff's alleged "lost compensation resulting from disparate pay treatment over the period from June 11, 2016 to October 15, 2018." Shapiro Rep. 4. As plaintiff claims damages for violation of the NYLL from January 2, 2014 to the end of her employment, it is unclear why Dr. Shapiro only calculates plaintiff's lost compensation beginning in 2016. *See* Pl. Opp'n 11 ("[Plaintiff] is owed wages due to

Whether plaintiff is attempting to compare her pay with Caruso's pay from the early 1970s, or his pay from 2008, this method of comparison is unavailing. As articulated in *Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20-cv-08037, 2023 WL 3764823 (S.D.N.Y. June 1, 2023), the "Second Circuit ordinarily evaluates [unequal pay] claims by comparing the compensation paid to different employees in the same year . . . perhaps because it seemed sufficiently obvious that comparisons should be made within the same time period." *Id.* at *7. Plaintiff attempts to distinguish *Hatzimihalis* by correctly noting that in that case, the plaintiff was attempting to compare her wages to comparators hired and paid after her, where the plaintiff in the instant case attempts to compare her wages to those paid before her. Pl. Opp'n 12. Additionally, plaintiff points to language in *Hatzimihalis* that holds "plaintiff may rely on between-year comparisons to make out a prima facie case" when "a reasonable jury could conclude that the time periods at issue are similar[.]" Pl. Opp'n 12–13 (quoting *Hatzimihalis*, 2023 WL 3764823, at *9). Thus, plaintiff correctly argues that a plaintiff may make out a prima facie case of unequal pay by showing that she was paid less than a comparator in a different time period.

However, plaintiff fails to offer evidence to meet her "burden of establishing similarity" between the time periods she seeks to compare. *Id.* As articulated by the court in *Hatzimihalis*, "[r]equiring plaintiffs to prove the similarity of the relevant time periods . . . [is] consistent with the overall burden-shifting scheme" of the NYLL. *Id.* at *8. Thus, plaintiff is "required to show that the time period under examination was sufficiently similar to presumptively require equal pay[.]" *Id.* However, plaintiff has offered no evidence that would allow a reasonable jury to conclude that the time periods at issue are

---

violations of NYLL § 194 from January 2, 2014, and due to violations of NYSHRL and NYCHRL from January 2, 2017 through the end of her employment.)

sufficiently similar to presumptively require equal pay. In fact, the court in *Hatzimihalis* concluded that the plaintiff could not compare the pay she received in 2016 to the pay her comparators received in 2018, because the business grew and profitability fluctuated during those few years. *Id.* at *9. Here, plaintiff has not presented any evidence concerning Prince's business or the industry between when Caruso had the same level of experience as plaintiff in the 1970s, in 2008 when Caruso's pay was used as a "benchmark," and the late 2010s when plaintiff was allegedly underpaid. Thus, plaintiff has offered no evidence from which a reasonable jury could find that payroll specialists in these differing time periods should presumptively have received equal pay.

As plaintiff has failed to offer evidence by which a reasonable jury could find that plaintiff performed equal work under similar conditions as her offered comparator, and yet received unequal pay, defendants' motion for summary judgment on plaintiff's NYLL unequal pay claim is **GRANTED**.

*B. NYSHRL Unequal Pay Claim*

While a plaintiff bringing a NYLL unequal pay claim must show that she performed equal work for unequal pay, the NYSHRL makes "actionable any form of sex-based compensation discrimination" and is analyzed under the "well-known burden shifting framework" adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 284–85 (S.D.N.Y. 2020) (noting different standards for disparate pay claims under the NYLL and the NYSHRL). Under this framework, plaintiff may establish a prima facie case of compensation discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of

discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).[9] Unlike her NYLL claim, plaintiff need not show that she performed "equal work" with her offered comparator and may instead make a claim for sex-based wage discrimination if she offers evidence that "the challenged wage rate is not based on seniority, merit, quantity or quality of production, or any other factor other than sex." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110–11 (2d Cir. 2019). However, the plaintiff carries "an additional burden on her [] NYSHRL claim[]: she must also produce evidence of discriminatory animus." *Zimpfer v. Hilbert Coll.*, ---F. Supp. 3d---, No. 21-cv-00231, 2025 WL 1758266, at *16 (W.D.N.Y. June 25, 2025).

Here, plaintiff has not offered any evidence that her wage rate was based on her sex, or any evidence of discriminatory intent, circumstantial or otherwise. Plaintiff's opposition states simply that plaintiff was paid less than Caruso when considering their experience, and thus summary judgment on all her unequal pay claims should be denied. *See* Pl. Opp'n 10–14. First, as discussed above, plaintiff's calculations comparing plaintiff and Caruso's pay are insufficient to establish that plaintiff was paid less than Caruso "when taking into account their experience" and responsibilities. Pl. Opp'n 10. Second, even assuming plaintiff was able to establish that she was paid less than Caruso when

---

9 In 2019, the NYSHRL was amended to provide that its provisions "shall be construed liberally . . . regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300 (2023). However, the amendment does not have retroactive effect. *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 452 (S.D.N.Y. 2023). Therefore, the Court continues to analyze NYSHRL claims concerning conduct that occurred prior to October 11, 2019 under the standard more akin to Title VII claims. *See Wellner v. Montefiore Med. Ctr.*, No. 17-cv-03479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (The NYSHRL "amendments only apply to claims that accrue on or after the effective date of October 11, 2019"). As plaintiff was terminated in September 2019, the Court considers her NYSHRL claim pursuant to this higher standard.

taking into account their respective experience, plaintiff has offered no evidence to show that she was paid less because of her sex, or evidence that would allow a reasonable jury to find that a disparity existed due to discriminatory animus. *Cf. Miller v. Levi & Korsinsky, LLP*, 695 F. Supp. 3d 397 (S.D.N.Y. 2023) (denying summary judgment where defendants refused to pay plaintiff a bonus and plaintiff presented evidence of sexist remarks made by employers). Thus, summary judgment is appropriate. *See Valerio v. Metro. Transp. Auth.*, No. 24-1614, 2025 WL 686028, at *4 (2d Cir. Mar. 4, 2025) (finding summary judgment on NYCHRL and NYSHRL claims appropriate where plaintiff had "not produced any admissible evidence of direct unlawful discriminatory intent or disparate treatment").[10]

Having failed to present evidence from which a reasonable jury could conclude that plaintiff was paid less because of her sex, defendants' motion for summary judgment on plaintiff's NYSHRL unequal pay claim is **GRANTED**.

## III. Disability Discrimination Claims

### *A. Failure to Accommodate*

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges

---

[10] In her opposition to defendants' motion for summary judgment, plaintiff argues that she also brings an unequal pay claim pursuant to the NYCHRL, even though the claim was not named in her complaint. Pl. Opp'n 14. Defendants correctly note that plaintiff also did not raise a NYCHRL claim during discovery or in the parties' pre-motion letters in anticipation of the instant motions. *See* Defs. Reply 11; *see also* ECF Nos. 32, 37. Nevertheless, plaintiff's NYCHRL claim would fail for the same reason as her NYSHRL claim: she has failed to offer evidence of discriminatory intent. *Doe v. N.Y. Univ.*, No. 20-cv-01343, 2023 WL 5293688, at *6 (S.D.N.Y. Aug. 17, 2023), *aff'd*, No. 23-1246, 2024 WL 4834965 (2d Cir. Nov. 20, 2024) ("To plead a discrimination claim under the NYCHRL, a plaintiff must allege [] that [she] was treated less well because of a discriminatory intent.").

of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination "for failure to accommodate under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [her] employer refused to make a reasonable accommodation." *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025). "Plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to meet the essential eligibility requirements of the position, after which defendant bears the burden of proving that the requested accommodation is not reasonable." *Wenc v. New London Bd. of Educ.*, 702 F. App'x 27, 29 (2d Cir. 2017) (summary order). The reasonableness of a proposed accommodation is "fact specific and must be evaluated on a case-by-case basis." *Bielski v. Green*, 674 F. Supp. 2d 414, 424 (W.D.N.Y. 2009). If plaintiff establishes a prima facie failure to accommodate claim under the ADA and the NYSHRL, she "also meets her less-demanding burden under the New York City Human Rights Law." *Knox v. CRC Mgmt. Co.*, 134 F.4th 39, 52 (2d Cir. 2025).

The parties do not dispute the first two elements of a prima facie case: that plaintiff was a person with a disability under the ADA and that defendants are employers covered by the statute. The parties do dispute, however, whether an accommodation existed that would have allowed plaintiff to perform the essential functions of her position and whether defendants refused to make a reasonable accommodation. Specifically, defendants argue that working full time in person is an essential function of plaintiff's job duties, while plaintiff argues that she could perform her essential functions while working part time, or working full time despite her doctor's direction that she work part time.

The regulations promulgated by the Equal Employment Opportunity Commission define essential functions as the "fundamental job duties" of the position, but not "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *see also Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998) (applying 29 C.F.R. § 1630.2(n)(1) to ADA claims). To determine a position's essential functions, "a court must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013). Although no factor is dispositive, relevant factors include an "employer's judgment," "written job descriptions," consequences of not performing the function, and the work experience of employees in similar positions. *Stone*, 118 F.3d at 97 (citing 29 C.F.R. § 1630.2(n)(3)). An employer's judgment as to which functions are essential receives "considerable deference," and a "reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). "Ultimately, however, the question whether a task constitutes an essential function depends on the totality of the circumstances." *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023). Where the underlying material facts are undisputed, a court may determine the essential functions of a position as a matter of law. *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 128 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 56(c). However, when the underlying factors, taken together and viewed in the non-movant's favor, indicate a "reasonable dispute" as to whether a duty is essential, that is a question for the trier of fact. *McMillan*, 711 F.3d at 126.

Here, plaintiff presented the following as reasonable accommodations that she claims would allow her to perform the essential functions of her job, which defendants

rejected: returning to work in person part-time, returning to work full-time but working partly from home, and returning to work full-time and in person with no accommodation.

i. Plaintiff's Request to Work Part-Time.

Defendants argue that plaintiff could not perform the essential functions of her position because her position required her to work full time. To support this claim, defendants point to the following: defendants, as the employer, considered the position to be full-time; plaintiff worked 35 hours per week before her accident; plaintiff's replacement while she was on leave, Catherine Pepe, spent more than 20 hours a week completing plaintiff's tasks; and two individuals who occupied a similar role had worked full-time. Defs. Reply 13. Defendants note that Pepe testified that she could not complete plaintiff's payroll duties within 20 hours per week. Decl. of Adam Guttell Ex. 4 98:9–14, ECF No. 72-6. Defendants also note that some of plaintiff's secretarial duties were essential because only a limited number of employees could perform them. Defs. Reply 14–15.

In response, plaintiff points to the following evidence: plaintiff filled out a detailed list of each of her essential duties and how long it takes to complete each one, and concluded that she could complete her essential duties in approximately 15 hours, 33 minutes per week. Pl. Opp'n 16. Additionally, during plaintiff's leave, Catherine Pepe covered all of plaintiff's payroll duties on top of her existing duties. Pl. Opp'n 17. And though Pepe testified that she could not complete those duties within 20 hours per week, she also testified that her hours changed only slightly: she would work through lunch and work from 7:30 AM to 4:30 PM, which is approximately two hours per day longer than her schedule before plaintiff went on leave. Decl. of David Zevin Ex. H 23:9–24:10, ECF No. 67-10. Plaintiff also contends that some secretarial duties, such as accepting

deliveries, answering the phone, and notarizing documents, were usually handled by other employees. Pl. Counter 56.1 ¶ 15. Upon review of the totality of the circumstances, the Court finds that each party has raised facts which put the essential nature of a full-time position in genuine dispute.

First, defendants have failed to identify specific essential tasks which would be eliminated were plaintiff to be placed on a part-time schedule. Defendants state, in a relatively conclusory fashion, that plaintiff's "essential duties required her to be at work full-time, approximately 35 hours per week." Defs. Reply 16. While defendants note that plaintiff worked this amount of time in the past, and plaintiff's employer considered the job to be full-time, this does not establish that plaintiff could not perform her work in 20 hours per week. To the contrary, plaintiff presented evidence that she could complete her duties in less than 20 hours, and Pepe only worked an additional two hours a day when plaintiff's duties were added to her responsibilities.

Further, defendants do not present evidence that plaintiff's duties need to occur at a specific time, which would require full time work, in contrast to those cases where a plaintiff's position "absolutely required their presence during specific business hours." *See McMillan*, 711 F.3d at 127. For example, in *McMillan*, the court found that the plaintiff's duties did not require him to be in the office at certain times in order to complete his work in a timely manner, and thus the plaintiff's requested accommodation of a flexible start time would not eliminate an essential function of his position. *Id.* The *McMillan* court compared the plaintiff's position to that of a nurse who supervised other employees during specific shifts, or an employee with a 4:00 p.m. daily deadline that would be impaired by a flexible start time. *See id.* (citing *Guice-Mill v. Derwinski*, 772 F. Supp. 188, 199 (S.D.N.Y. 1999); *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994)). In

*McMillan*, as here, the defendant employer was unable to identify a specific task that needed to happen at a certain time of day and which the plaintiff could not accomplish if they were not in the office at that particular time. Thus, the Court concluded that it was not an essential function of the plaintiff's position to be in the office at certain times.

While an employer is granted deference in determining what functions are essential, where a reasonable juror could find that the plaintiff would be able to complete all of her work in a timely fashion, summary judgment is not appropriate. *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) (explaining that "a modified work schedule may constitute a reasonable accommodation in certain circumstances," if it does not involve the elimination of an essential job function); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336 n.5 (2d Cir. 2000) (noting that part-time work can constitute a reasonable accommodation where the employee can demonstrate that she can perform the essential functions of the job while working part-time). Here, the Court finds that a reasonable juror could view the conflicting evidence presented by each party and conclude that working full time was not an essential function of plaintiff's position. Thus, plaintiff has met her burden of establishing a prima facie case of failure to accommodate.

Once the plaintiff has established a prima facie case, the burden shifts to the employer to offer evidence that the plaintiff's proposed accommodation would constitute an undue hardship for the defendant employer. *Greenbaum v. N.Y.C. Transit Auth.*, No. 21-1777, 2022 WL 3347893, at *4 (2d Cir. Aug. 15, 2022). An undue hardship is defined as "an action requiring significant difficulty or expense." *Id.* (citing 42 U.S.C. § 1211(10)(A). Thus, the burden shifts to defendants to show that allowing plaintiff to work 20 hours per week would have constituted an undue hardship. The Court finds that

defendants have not made this showing. In support of their argument that plaintiff's request to work part-time would have constituted an undue burden, defendants claim that because plaintiff was "one of a handful of office staff," and because another office member was leaving defendants' employment in May 2019, allowing plaintiff to work part time would put "additional stress on Prince's office operations." Defs. Mot. 23. Defendants' conclusory assertion of "additional stress" is insufficient to meet their burden to show undue hardship as a matter of law. *See e.g. Laguerre v. Nat'l Grid USA*, No. 20-3901-CV, 2022 WL 728819, at *4 (2d Cir. Mar. 11, 2022) (finding employer had not satisfied burden of showing undue hardship with "conclusory testimony" that it did not possess technology to accommodate plaintiff's disability, with no evidence that the technology was unavailable or unreasonably expensive); *Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 301 (E.D.N.Y. 2013) (denying summary judgment where defendant offered only conclusory declaration that accommodating plaintiff's request would result in additional costs and scheduling issues).

In support of their undue hardship argument, defendants rely on *Plourde v. Snow*, which found that the plaintiff's request to work part-time would have placed an undue burden on the defendant's operations. *See* No. 02-cv-05532, 2006 WL 4510754 (E.D.N.Y. June 14, 2006), *aff'd sub nom. Plourde v. Paulson*, 236 F. App'x 656 (2d Cir. 2007). However, *Plourde* is distinguishable from this case. In *Plourde*, it was undisputed that the plaintiff's position involved supervising others and was time sensitive, and thus the plaintiff could not genuinely dispute that the essential functions of her position would be impaired if she worked part-time. *Id.* at *8. Here, it is undisputed that plaintiff did not supervise others. Pl. Counter 56.1 ¶ 29. Additionally, plaintiff has offered evidence that most of her work was not time sensitive and could be completed throughout her week.

*See* Voss Dep. Tr. 179:11–180:4 (noting unemployment insurance could be sent out seven days from the date for which it was applied). Further, for those job duties that were time sensitive, for example, issuing layoff checks, defendant Voss testified that someone else in the office can perform the job duty. *See* Voss Dep. Tr. 57:24–59:8.

Additionally, in *Plourde*, while the plaintiff was temporarily working part-time, the defendant had to use another employee to perform the plaintiff's duties and thus had to pay two employees to perform the duties of one position. *Plourde*, 2006 WL 4510754 at *10. This stands in contrast to the instant case: while plaintiff was out on medical leave, her duties were managed completely by existing employees of Prince without bringing in additional help. In *Plourde*, while defendants demonstrated that they would have been required to pay two employees to perform the duties of plaintiff's one position while plaintiff was working part-time, defendants in the instant case have made no such showing.

Thus, defendant have not established that they would face an undue hardship as a matter of law if plaintiff was afforded the accommodation of working part-time.

<u>ii. Plaintiff's Request to Work Full-Time in Contravention of Medical Advice</u>

Defendants also claim that they are entitled to summary judgment because plaintiff's alternative requests, to work full time by spending 20 hours in the office and finishing her work at home, or to work full time in person with no accommodations, each conflicted with her medical restrictions. Defs. Mot. 15. Defendants alternatively argue that allowing plaintiff to work part-time from home would constitute an undue hardship as plaintiff handled sensitive payroll data and blank checks and allowing her to handle these

materials at home would constitute a security risk. Defs. Mot. 23–24. The Court finds these arguments to be without merit.

a. Working in Contravention of Medical Advice

Defendants' argument that, as a matter of law, Prince could not allow plaintiff to return to work full-time in contravention of her doctor's recommendation is misplaced. Each case defendants rely on for this proposition is distinguishable and does not stand for the broad holding defendants argue.

For example, defendants point to the Second Circuit's decision in *Wenc v. New London Board of Education* as supportive of their argument that when an employee's "request for an accommodation directly contradicts that employee's doctor's prescribed medical restrictions, the employer is not obligated to provide the employee with their preferred accommodation[.]" Defs. Mot. 15. (citing *Wenc*, 702 F. App'x at 30). However, *Wenc* does not stand for the broad proposition that an accommodation that is against a doctor's recommendation is a per se unreasonable accommodation. Instead, *Wenc* stands for the well-established proposition that an employee cannot insist on a particular accommodation when the employer proposes a reasonable accommodation. *Wenc*, 702 F. App'x at 424.

In *Wenc*, the district court found that the defendant school district had reasonably accommodated the plaintiff by granting him medical leave, as was his doctor's recommendation, even though the plaintiff would have preferred a transfer to a different grade level. *Id.* at 30. The accommodation offered by the employer would have allowed the plaintiff to remain employed and accommodated his medical restrictions. Here, the issue is not plaintiff's insistence on a particular accommodation. Instead, plaintiff was not

offered any accommodation for her medical restrictions whatsoever, and also not permitted to return to work full-time.

Similarly, in *Bielski*, the defendant employer proposed an accommodation that would have allowed the plaintiff to continue working and accommodated her medical restrictions, even though it was not the accommodation that the plaintiff preferred. In that case, the court held that once an "employer has proposed a reasonable accommodation, the employee cannot insist on some other particular accommodation, even if the employee's proposed accommodation is also reasonable." 674 F. Supp. 2d at 424. Here, defendants did not propose any accommodation to plaintiff that would have allowed her to continue working and accommodated her medical restrictions. It is undisputed that plaintiff requested to return to work for more than 20 hours per week, notwithstanding her doctor's recommendation, and defendants refused and did not provide an alternative accommodation.

Additionally, *Rodriguez v. Atria Sr. Living Group, Inc.*, 887 F. Supp. 2d 503 (S.D.N.Y. 2012), does not command that, as a matter of law, any accommodation not directed by an employee's doctor is unreasonable. In *Rodriguez*, the court found that the defendant did not "violate the ADA by relying on the opinion of a medical professional . . . about what accommodation [the employee's] injury required or by insisting that [the employee] provide proof of the need for the requested accommodation" that was more than the accommodation recommended by his doctor. *Id.* at 511–12. Here, rather than requesting accommodations above those directed by her doctor, plaintiff requested to return to work with less accommodation than required by her doctor. Whether such an accommodation would be unreasonable is a question for the trier of fact.

Thus, defendants have not shown that, as a matter of law, an accommodation that conflicts with a doctor's recommendation is unreasonable.

b. Undue Hardship.

Defendants alternatively argue that allowing plaintiff to work part-time from home would have presented an undue hardship in the form of a security risk, as plaintiff handled sensitive payroll data. Defs. Mot. 23–24. In response, plaintiff points to evidence that other Prince employees, including herself, worked from home sporadically. Pl. Opp'n 29. Defendants in reply rely largely on their argument that plaintiff's medical restrictions prevented her from working more than 20 hours per week, either from the office or from home, and thus plaintiff cannot show that allowing plaintiff to work from home could constitute a reasonable accommodation. Defs. Reply 28–30. As discussed above, the Court has considered defendants' argument that an accommodation which conflicts with a doctor's recommendation is unreasonable as a matter of law and rejected it. Thus, the next question before the Court is whether defendants have shown that allowing plaintiff to work from home would impose an undue hardship on defendants. As defendants have not made this showing, summary judgment is not appropriate.

While defendants claim that allowing plaintiff to work from home would constitute an undue security risk, plaintiff has pointed to evidence that she worked from home with materials containing sensitive payroll data prior to her work-from-home request being denied. Pl. Opp'n 29. Plaintiff testified that, prior to June 2019, she took documents home from Prince Carpentry and informed Voss that she had done so. Pl. Opp'n Ex. J 128:7–129:14 ("Pl. Dep. Tr."), ECF No. 67-12. Plaintiff testified that certain documents she took home contained information including employee names and the last four digits of their Social Security numbers. Pl. Dep. Tr. 128:25–129:1. Plaintiff has also offered emails she

allegedly sent from home to Prince that contained attachments of payroll documents containing sensitive information. Pl. Opp'n Ex. O, ECF Nos. 67-17, 67-18. Plaintiff has therefore raised a genuine question of fact as to whether payroll employees were permitted to work from home prior to her termination, and thus a genuine question as to whether allowing plaintiff to work from home part time would create an undue hardship. *See* Pl. Counter 56.1 ¶ 96.[11]

Therefore, the reasonableness of plaintiff's requested accommodations—to return to work part-time, or to return to work full-time either fully in the office or part-time from home—is a question of fact for the jury and thus not appropriate for summary judgment. Defendants' motion for summary judgment on plaintiff's failure to accommodate claims brought pursuant to the ADA, the NYSHRL, and the NYCHRL is **DENIED**.

*B. Disparate Treatment Claims*

Defendants also seek summary judgment on plaintiff's disability discrimination claims brought under a disparate treatment theory. Defendants argue that plaintiff cannot establish that the proffered reason for her termination—that she could not work full-time according to her doctor—was a pretext for unlawful discrimination. Defs. Mot. 25–26. Defendants also argue that plaintiff cannot make a prima facie case of disability discrimination under the more lenient NYCHRL, as plaintiff cannot show that she was treated "less well" than any other employee because of her disability. Defs. Mot. 27. In opposition, plaintiff states that pursuant to the same analysis performed in support of her

---

[11] As the Court finds that plaintiff has presented a question of fact as to whether Prince allowed employees to work from home prior to her termination, the Court need not reach the parties' arguments regarding whether defendants' work-from-home policy during the COVID-19 pandemic after plaintiff's termination should be considered in evaluating whether allowing plaintiff to work from home in 2019 would have been an undue hardship. *See* Pl. Opp'n 28–29; Defs. Reply 27.

failure to accommodate claim, her disability discrimination claim should also survive. Pl. Opp'n 37–38.

Failure to accommodate claims and disparate treatment claims brought under the ADA are different theories of discrimination that generally require distinct analyses. *See Geer v. Gates Chili Cent. Sch. Dist.*, 577 F. Supp. 3d 147, 166 (W.D.N.Y. 2021) (noting that "[a]lthough related," disparate treatment and failure to accommodate claims "are conceptually different claims"). A disparate treatment claim requires a showing that the defendants treated the plaintiff less favorably than others because of the plaintiff's protected characteristic, in this case, plaintiff's disability. To establish a prima facie case of disability discrimination, the plaintiff must establish that "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Once the plaintiff has made a prima facie case of disparate treatment, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to set forth some legitimate, nondiscriminatory reason for the adverse employment action. *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 140 (E.D.N.Y. 2015). Where the employer has articulated such a reason, the burden shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Geer*, 577 F. Supp. 3d at 167.

However, as defendants do not claim that the plaintiff was terminated for some reason unrelated to her disability, the burden-shifting framework established by *McDonnell-Douglas* is less helpful. *See McMillan*, 711 F.3d at 129. The *McDonnell-Douglas* burden-shifting framework is most useful for "weed[ing] out non-viable claims

of discrimination based on circumstantial evidence." *Id.* "When the parties agree that the employer" terminated the plaintiff for some reason directly connected with her disability, "there is no need to evaluate whether the employer's adverse employment action . . . is pretextual." *Id.* Accordingly, while disparate treatment and failure to accommodate claims are conceptually distinct, where a plaintiff "asserts that an adverse employment action is tied to an employer's failure to accommodate," the failure to accommodate the plaintiff's disability may constitute evidence of discriminatory intent. *Piligian v. Ichan Sch. of Med. at Mount Sinai*, No. 17-cv-01975, 2020 WL 6561663, at *5 (S.D.N.Y. Apr. 7, 2020), *report and recommendation adopted sub nom. Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707 (S.D.N.Y. 2020).

Therefore, where a plaintiff claims that the employer failed to reasonably accommodate her disability, and this failure led to the basis upon which the plaintiff was terminated, there is no need to determine whether the proffered reason for discharge was a pretext. Instead, the plaintiff must demonstrate that "with reasonable accommodations, [s]he could have performed the essential functions of her job." *McMillan*, 711 F.3d at 129. The plaintiff must also show the connection between the failure to accommodate, the performance deficiencies, and the adverse employment action. *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019). Where a plaintiff establishes a claim for disability discrimination under the ADA and the NYSHRL, she has also necessarily established a claim for disability discrimination under the NYCHRL. *See Ragin v. Riverbay Corp.*, No. 20-2233-cv, 2021 WL 4057196, at *3 (2d Cir. Sept. 7, 2021) ("[W]e evaluate the state law disability claim co-extensively with the federal claim because the scope of the disability discrimination provisions of the NYSHRL are similar to those of the ADA."); *see also Limauro v. Consol. Edison Co. of N.Y., Inc.*, No. 20-cv-03558, 2021 WL 466952, at *4

(S.D.N.Y. Feb. 9, 2021) ("Practically speaking, because the NYCHRL is more protective than its state and federal counterparts, a claim is automatically stated under the NYCHRL if it is stated under the federal and state statutes.").

The parties do not dispute that plaintiff has satisfied the first two elements of a disparate treatment claim, that defendants are subject to the ADA or that plaintiff is disabled within the meaning of the ADA. Additionally, as discussed above, the Court has found that plaintiff has offered evidence from which a reasonable jury could conclude that plaintiff would have been able to perform the essential functions of her job, with or without a reasonable accommodation. Next, the parties do not dispute that plaintiff was advised by her doctor that she should not work more than 20 hours per week, and that defendants terminated her because she was directed not to work full-time. Thus, plaintiff has satisfied the fourth element of a prima facie case of disparate treatment: she has offered evidence from which a reasonable jury could conclude that she suffered an adverse employment action because of her disability. *See Presumey v. Town of Greenwich Bd. of Educ.*, No. 15-cv-00278, 2018 WL 740194, at *6 (D. Conn. Feb. 7, 2018), *aff'd sub nom. Presumey v. Bd. of Educ., Town of Greenwich*, 770 F. App'x 595 (2d Cir. 2019) (finding in disparate treatment claim that plaintiff need only demonstrate that she could have performed the essential functions of her job where it was undisputed that plaintiff was unable to lift students due to her disability and was terminated as a result). As defendants do not claim that they terminated the plaintiff for some reason unrelated to her disability, there is no need to evaluate whether defendants' proffered reason for plaintiff's termination is pretextual. *See McMillan*, 711 F.3d at 129.

Accordingly, defendants' motion for summary judgment on plaintiff's disparate treatment claims brought pursuant to the ADA, the NYSHRL, and the NYCHRL is **DENIED**.

## IV. Family and Medical Leave Act Claims

### *A. FMLA Interference*

Defendants move for summary judgment on plaintiff's FMLA interference claim, arguing that plaintiff's claim fails because she was provided twelve full weeks of FMLA leave as required by statute. Defs. Mot. 29. In her opposition, plaintiff states that the "evidence and arguments in opposition to [defendants'] motion for summary judgment on [plaintiff's] FMLA claims and in support of her motion for an Order establishing violations of the FMLA's notice requirements overlap and are intertwined, so they will be combined in one section." Pl. Opp'n 39. Plaintiff's opposition then notes the instances where defendants failed to provide plaintiff with the required notice of her FMLA rights, and that defendants failed to provide adequate FMLA notice in the employee handbook. Pl. Opp'n 40. As plaintiff has failed to present evidence that these failures interfered with her rights secured by the FMLA, summary judgment is appropriate.

The FMLA entitles eligible employees to twelve workweeks of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C § 2612(a)(1)(D). The FMLA also prohibits an employer from interfering with an employee's exercise of this entitlement. *Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*, 838 F. App'x 603, 605 (2d Cir. 2020) (summary order). To establish a prima facie case of FMLA interference, a plaintiff must demonstrate that: "(1) she is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) she was entitled to take leave under

the FMLA; (4) she gave notice to the defendant of her intention to take leave; and (5) she was denied benefits to which she was entitled under the FMLA." *Id.*

The regulations promulgated under the FMLA require employers to provide employees with certain notices regarding an employee's eligibility for FMLA leave and their rights under the FMLA. Where an employer fails to provide these notices in compliance with their obligations, that failure may be compensable as FMLA interference if the failure interfered with a plaintiff's ability to structure her leave to preserve the job protections afforded by the FMLA. *Rengan v. FX Direct Dealer, LLC*, No. 15-cv-04137, 2017 WL 3382074, at *5 (S.D.N.Y. Aug. 4, 2017). Where the requisite notices have not been provided, the question for summary judgment is whether a reasonable juror could find that the plaintiff was prejudiced and the notice failure caused the plaintiff to lose her job. *Id.* at *7. Therefore, if plaintiff can offer evidence which creates a genuine dispute regarding whether defendants' FMLA notice failures interfered with her ability to return to work and thus cost plaintiff her job, summary judgment on plaintiff's FMLA interference claim is inappropriate.

Plaintiff argues that her ability to return to work was interfered with because defendants' FMLA notices issued in February and March 2019 were ambiguous as to when plaintiff's FMLA leave ended. Pl. Opp'n 40–41. This argument is belied by the record before the Court. Plaintiff was sent a letter on February 22, 2019, informing her that her leave was designated as FMLA leave "from this point forward." Defs. 56.1 ¶ 60; Pl. Counter 56.1 ¶ 60. The interpretation of the plain text of this letter indicates that plaintiff's FMLA leave expired twelve weeks from February 22, 2019, which was May 17, 2019. Nevertheless, plaintiff argues that this was ambiguous because she originally went on leave in October 2018 and was informed on March 13, 2019 that her FMLA leave was

approved. Pl. Opp'n 41. However, even if plaintiff was under the mistaken impression that her leave expired twelve weeks from March 13, 2019, that would set June 5, 2019 as the day her leave expired. Yet, plaintiff did not return to work on June 5. Indeed she met with defendants on June 3, weeks after her leave actually ended to continue discussions concerning plaintiff's return. Pl. Counter 56.1 ¶ 88. It was not until more than a week after June 5, when plaintiff believed her leave ended and she still failed to return to work, that she was terminated. Thus, even if defendants' delay in providing FMLA notice caused plaintiff confusion as to her return to work date, she was not terminated until after the date that she believed was correct.

Plaintiff does not state how any ambiguity in the FMLA notices impeded her ability to return to work in mid-May, when her FMLA leave expired, or the beginning of June, before she was terminated. Instead, she states that she "would have behaved very differently had she known that [defendants] considered her leave to be over in mid-May," but does not state how she would have behaved differently or how this different behavior would have allowed her to return to work. Pl. Opp'n 41.

It is undisputed that plaintiff was provided with twelve weeks of FMLA leave beginning the date of the February FMLA notice. While defendants do not dispute that they failed to provide plaintiff with the requisite FMLA notices until February and March 2019, plaintiff has not presented any evidence that this failure prejudiced her ability to return to work following the expiration of her leave. Therefore, summary judgment is appropriate.

Defendants' motion for summary judgment on plaintiff's FMLA interference claim is **GRANTED**.

*B. FMLA Retaliation*

FMLA retaliation claims are evaluated under the familiar burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Greenberg*, 838 F. App'x at 606.

Defendants argue that plaintiff cannot establish a prima facie case of FMLA retaliation because she was not qualified for her position at the time of her termination, and because she cannot establish that defendants' decision to terminate her for not returning to work following the expiration of leave was in retaliation for taking FMLA leave. Defs. Mot. 32–33. Plaintiff does not respond to defendants' argument that her FMLA retaliation claim should be dismissed. Pl. Opp'n 39. Nor does plaintiff's subsequent motion in further support of her cross-motion for the establishment of certain facts address her FMLA retaliation claim. *See* Pl. Reply.

As noted by defendants, where a party fails to present arguments in opposition to a motion for summary judgment on a particular claim, the Court may properly conclude that the claim is abandoned. *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) ("[W]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, especially in the case of a counseled party where a court may infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."). Even after defendants noted plaintiff's failure to respond to defendants' arguments concerning plaintiff's FMLA

retaliation claim, plaintiff had an opportunity to respond and present arguments as to why her FMLA retaliation claim should survive. Plaintiff did not do so; thus, the Court concludes that plaintiff's FMLA retaliation claim has been abandoned.[12]

Accordingly, defendants' motion for summary judgment on plaintiff's FMLA retaliation claim is **GRANTED**.

### V. Plaintiff's Motion for the Establishment of Certain Facts

Plaintiff moves for the establishment of certain facts pursuant to Rule 56(g) of the Federal Rules of Civil Procedure. Plaintiff requests that the Court treat as established that defendants failed to provide plaintiff with certain required FMLA documents. Pl. Opp'n 41. Plaintiff argues that she is entitled to the establishment of those facts because they are undisputed. Pl. Opp'n 40. The Court disagrees.

The decision "of the Court to enter an order . . . under Rule 56(g) is a matter of discretion." *D'Iorio*, 68 F. Supp. at 356. The purpose of Rule 56(g) is "to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." *Id*. However, even if a fact is not genuinely in dispute, the court "may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Hasemann*, No. 15-cv-02995, 2024 WL 1282368, at *15.

Plaintiff has not moved for summary judgment on her FMLA claims, and instead only seeks to establish the fact that defendants failed to provide plaintiff notice of her

---

12 The only discussion of the FMLA in plaintiff's opposition concerns her FMLA notices. This section does not discuss the elements of an FMLA retaliation claim, does not argue that plaintiff was terminated in retaliation for exercising her rights under the FMLA, and points to no evidence that would support a finding that she was terminated because of a retaliatory intent.

rights under the FMLA within 5 days of plaintiff notifying them of a potentially FMLA leave eligible event. While defendants do not dispute that they failed to provide plaintiff notice of her FMLA rights within five days' notice, defendants argue that this fact does not give rise to liability. Defs. Mot. 30–31. As discussed *supra*, the Court agrees, and has granted summary judgment on plaintiff's FMLA claims. Therefore, these claims will not be presented to the jury. Accordingly, the Court finds that establishing the fact that defendants failed to comply with their FMLA notice obligations will not serve the purposes of Rule 56(g), in that establishment of this fact will not significantly "streamline the litigation process by narrowing the triable issues." *D'Iorio*, 68 F. Supp. 3d at 356.

For the reasons stated above, plaintiff's motion for the establishment of certain facts is **DENIED**.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part, defendants' motion in limine is **GRANTED** in part and **DENIED** in part, and plaintiff's motion for the establishment of certain facts is **DENIED**. In accordance with the Court's Individual Practice Rule IV.A, the parties shall file a proposed joint pretrial order by October 8, 2025.

Plaintiff is also ordered to file Dr. Balvindar Sareen's report on the docket, with redactions in line with this Order, on or before September 22, 2025.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: September 8, 2025
Brooklyn, New York